Case number 10-1164, Gregg Lansing v. Southwest Airlines Company Okay, with the lawyer's approach, you can introduce yourself to the court. Good morning, Your Honors. Leslie Rosen on behalf of Gregg Lansing, the appellant. And Matt Walsh on behalf of Southwest. First of all, I must thank you very much for your indulgences. I know that my predecessor blew through a lot of deadlines, misstates the case was originally dismissed and reinstated. And so my client is very, very grateful that the case is back. And that leads me to my first point, which is not in my brief, but I need to correct the jurisdictional statement. Because I know you have your own responsibility and independent duty to investigate jurisdiction. And the opening brief states that this is an appeal pursuant to Rule 304A, and that is what the final order says. It is pursuant to 304A, but the final order is quite incorrect. Because when I was looking through the appendix, the first ruling by Judge Flanagan was a motion, was an order on a partial summary judgment. And then she let part of the case stay. Because this is a case involving whether Southwest Airlines is entitled to preemption by virtue of the fact that their employee used the Internet. And the judge ruled that the Communications Decency Act preempted anything relating to that, but she left in place any allegations that were based on either text messages or phone calls. Well, then the case came to the second amended complaint. And when you look at the record, you see that her order says that that case was dismissed on a 2-6-15 motion. And it was totally dismissed on 2-6-15. Although, frankly, I think it should have been on 2-6-19 and 2-6-15, because if there's preemption, it's an affirmative defense. But she just threw out the whole case, and the third amended complaint was also thrown out completely. So there's nothing left, nothing at all. But those aren't before us, right? No, but it does affect your jurisdiction. Because if it was under 304A, I don't think you'd have jurisdiction. So I want to just make sure that that's clear, that this case was completely disposed of below. It was clear before you even mentioned it, so you may proceed. Okay, thank you. Okay. Okay, then basically all facts. All the facts that are stated that come from in Ampli's brief about whether the facts are denied are irrelevant, because on a motion to dismiss, you take off facts as true. And this is just on the allegations of the complaint. And based on the allegations of the third amended complaint. Well, we're still proceeding under a summary judgment ruling. No, you shouldn't be. I mean, because it really wasn't a summary judgment. It was a dismissal. He wrote in the order that it was a summary judgment. But it's the same as de novo review. But in fact, it's a dismissal. Because the second amended complaint was dismissed for failure to state a cause of action, and then the third one was dismissed for the same reason. Then we get into whether or not a notice of appeal was filed after the third amended complaint. It was. Well, did it get attached to this one? No, it didn't. Right? No, the notice of appeal was filed after the order getting rid of the third amended complaint. Well, then did the notice of appeal allege that all those prior rulings were erroneous, and therefore we've judged wrong? I believe it does. But the briefs don't address those additional issues. They only address one. The third amended complaint. But I'm just saying that it was dismissed because it wasn't summary judgment. You can look at it. If you want to look at it as summary judgment, fine. But, well, no, it's really not fine because those facts are irrelevant. This is on a dismissal, the 2615 dismissal. Well, listen, you know, the underlining issue is the statute. Yes. The interpretation of the statute. Yes. Why don't you. I'll go right to that. Okay. So I'm just. The few minutes you have left to argue. Okay. I think should be based on the statute. Got it. Got it. Okay. First of all, this is a basic garden variety negligence supervision case. That's what this is. This is negligence supervision. It's not a case where Greg Lansing is trying to hold Southwest Airlines vicariously liable for the nasty, vicious e-mails and text messages of its employee. That's not the claim here. If that were the case. Just tell us why the statute is not applicable and you'll be doing yourself a service. Okay. Because the statute applies when you're trying to hold a provider liable for the content of a miscreant's acts. And we are not trying to do that. We are not trying to say, Southwest, you are liable because of these nasty things. What we're saying is, Southwest, we notified you that you have a renegade employee. We told you he's doing the wrong thing and you have a duty to discipline him or to supervise him and you're not doing that. That's not covered by the act. The whole case based on what the defendant is, whether he's a publisher or not a publisher, isn't that what it's all about? No. The case is about negligence supervision. But under the act, the act only protects those who are publishers. Correct. Yes. Thank you very much. He's not. Right. He doesn't qualify under the act. Right. No, he's not publishing. We're not trying to hold him liable for responding as superior or liable. Why don't you just tell us why he's not a publisher? Instead of going to all these side collateral things. Well, I'm sorry. I'm having a problem. I don't really understand. I don't think it's collateral. We're not seeking to hold him liable for the nasty stuff. So why doesn't the statute apply? Because the statute applies to provide. First of all, they're not a provider. If the employer is a provider, then all of us are providers. That's the bottom line. There's nothing in the statute. Do us this favor. Assume that they are a provider. Okay. Why doesn't the statute apply? Okay, because he's not a publisher. Thank you. But the first one, they're not a provider. Second of all, they're not a publisher. Okay? They're not the publisher or speaker. We're not trying to hold them liable for the speech. If we were trying to hold them liable for the speech, the act would preempt it. That's the bottom line. But we're not. We're saying, and I think that they're collapsing it. They're saying, you know, they're evidence. All the emails are evidence of some wrongdoing that the employer did not use.  By the trial court as to whether they're admissible as evidence or not, if that's the best evidence or whatever. But that is not the genesis, the basis of this case. But I also think they're not a provider besides being a publisher. They're not AOL. They're not, you know, Firefox, Internet Explorer, Microsoft, Google. A company with Internet service can't, if so fact, become a provider simply because they have computers in. That's my position, yes. And I think that when the act was first enacted in 1996, we were living in a different world. There's only one case in the United States that anybody has quoted, cited, that holds an employer as a provider. And that's the Delfino case. That's the only case. This is a case of first impression in Illinois. There's nothing like it in the Seventh Circuit. There's nothing like it anywhere. And really, because now everybody has Internet service. If they're a provider, I mean, I know you want me to mostly speak to the publishing. But if they're a provider, then if you have people in your house and they're using your Wi-Fi, you're a provider. Everybody's a provider, you know, who has service, unless you've decided only if you have more than 500 employees or 500 people in your house. You have to then delineate where that would be. But in today's world, anybody could be a provider. Because everybody uses the Internet at work. Justice Lankin gave you a roadmap. And she said, show us why they're not a publisher. I think you ought to follow the roadmap. When the judge tells you something, you should listen. I know, I know. But you're all prepared to do what you wanted to do without care of what we say. No, I'm so sorry. That's not true at all. I care greatly. But it's a very difficult issue because they do seem very closely related. They say, well, it came off your computer. You're really trying to get damages for the e-mails. But we're not. The damage isn't for the e-mails. Why don't you save some time for the buttons? Okay. Let's hear from the other side. Okay. Good morning, Your Honors. Matt Walsh for Southwest. I just want to correct one thing in the lower court. The trial court never dismissed the third-man complaint. They gave him leave to file the third-man complaint, and that still stands. And that's kind of important here because I think the issues here are kind of mixed up. Plaintiff has been saying that this is a case for self- Well, you're not saying that we don't have jurisdiction. No, absolutely not. I'm saying the issues are a little bit off here in terms of what we think they are. We're not up here saying that the CDA preempts a negligent supervision claim. We're up here saying that the CDA preempts a plaintiff from using the text and e-mail messages that were sent over Southwest Internet as the basis for the negligent supervision claim. In fact, the negligent supervision claim remains in the state court. It's still there. It's based on phone calls that he alleges that are exploitative. Why would they say you can use any other kind of evidence, but you can't use communication that goes over the Internet to support a negligent supervision claim? Why would the CDA say that? Yes, yes. What's the policy behind that limitation? Well, the policy behind that is that the CDA was enacted to foster Internet communications, not telephone communications. But doesn't the allegation of a negligent supervision take it out of the concerns that the CDA was meant to uphold? No, I don't think so, Your Honor. I think that the cases that- There aren't many. There aren't many, but there aren't negligent supervision cases. I'll give you that. But there are cases out there, including in Illinois, where plaintiffs argued that notice to a defendant about the content of communications sent over the Internet kind of takes the CDA preemption out of the play. And they said, no, that's not true. Even if a- What's the best case that you say- Barrett and Doe. Barrett's an Illinois case, and Doe is a Senate circuit case. And then you've got the female from California. I think if you look at both those cases from Illinois, you'll see that they say that explicitly, that notice of the communication by the Internet service provider and failure to take steps to take that information off the computer or failure to take steps to stop that from happening, that does not stop the CDA preemption from kicking in. Why? Why wouldn't it? I mean, what's the reasoning behind allowing it to still apply? Your Honor, I don't know why. I know what the cases say. I know the CDA's-why it was enacted. It was not-they wanted to prevent lawsuits against Internet service providers from having people that use this broad, broad access to Internet. Craig's List, that's what they did. Absolutely. And to go to the point about whether or not an employer is an Internet service provider, well, the congressional notes on this issue, and it's in my brief, I think, at page 15, clearly state that this act was entitled to protect not only the AOLs in the world, but also employers. Well, but the employers are maybe like Craig's List, as opposed to an employer simply having Internet access available at its work site. Yeah, I think the only case that talks about that is the Delfino case from California. I agree. And that is not a Craig's List-type employer. That is an employer just like Southwest, in fact, quite smaller. And the court there has said that it applied in, you know- It applied because it was a provider, but not a publisher, right? No, it applied because it was a provider and a publisher. And publishing here is-I mean, this case- That raises the interesting question, because you point that out in your brief, about had the send button not been pushed, it wouldn't have been a publisher because it would never have gotten out to the email. Absolutely. Absolutely. But, of course, if the send button hadn't been pushed, there would have been no damages to the plaintiff either, and this whole case wouldn't have arisen. But the fact is that it was pushed. And the question is whether there should-you know, the Southwest Airlines, to the extent that they failed to responsibly supervise their employee, at least following due notice- Notices. No, I understand that argument, but I don't think you can divorce the content of the messages which provide the basis of the injuries from their allegation that we negligently supervised our employee. And they go together. Without the messages, you don't have a negligence. Here's the other question that I had in reading the briefs. It concerned this employee of Southwest Airlines, and then at some point in the appellant's brief, they talk about the possibility that he may have been rehired by Southwest, and you point out that there's no evidence of that. But I like to focus on the fact that he was fired. And to the extent that he was let go, that suggests that something was amiss at the work site, that he was engaged in some sort of activity that wasn't approved by Southwest Airlines, and therefore was subject to discharge. And I can't see how that doesn't support the plaintiff's allegation. He was not discharged for sending messages over the Internet. He was discharged because he allegedly altered another fellow employee's, like a medical note from home. That's why he was discharged. See, what you're telling us here is that the Southwest has immunity under this act, so when they're notified that an employee is causing this kind of trouble, that you people have a license not to stop him. Well, I think that's true under the act, but I also think there's a fact issue here that, not a fact issue, but facts that haven't been brought up here, is that there's never been any evidence that this employee ever sent the messages. There's never been any evidence. He denied it all the way, all the way through. He was never fired for this. So what they're saying is that if some outsider calls up Southwest and says, there's an employee there we don't like, he's sending messages to us, Southwest investigates it. No matter how many notices they get, they investigate it. They don't find any evidence of him ever sending it. Now, this is not an outsider. This is another employee, isn't it? No, it's not. This is an outsider. This is not another employee. But, I mean, Southwest is supposed to take this guy's allegations as true and just fire this guy without any basis because they don't have any proof that these messages were ever sent? Investigate. We did. We did investigate. Just like in Delfino. Plaintiff says in Delfino that the employee was fired. Well, that's a, I mean, you're saying you did. I meant what I'm saying is for purposes of this, for the, I'm sorry, for purposes of the preemption, if the complaint is not saying that Southwest is the publisher of these statements, I mean, they have to prove that the text messages were sent, certainly, at trial. Why isn't this outside of CDA and why can't they go ahead on a complaint where they're not saying Southwest is just, provided they're saying Southwest hired this employee, had several notifications that he was sending these terrible messages to all kinds of people and they did nothing to stop it. So they've negligently, they haven't investigated, they've negligently supervised him and the plaintiff has been damaged. It doesn't seem like CDA protects them from that unless the complaint is saying that they're also a publisher. Of those messages. Yeah, and I think the complaint does say that in the sense that How does it say that they're a publisher? It says it in the sense, and the summary judgment is based on the First Amendment complaint, not the Second or Third Amendment complaint. And in the First Amendment complaint, they allege that Southwest failed to supervise their employee, but they also allege that that failure to supervise led to this employee transmitting thousands of text messages and publishing defamatory information. And once the group allegedly hit that send button, that turns Southwest into a publisher because according to the case law, the internet access provider, which here is the employer, if they provide that access and someone uses that access to send these types of messages, that turns that ISP into a publisher. Then you're always saying, I think I don't remember what judge, which one of my colleagues said it, but you're always saying that no matter how much notice a company has of someone's wrongdoing, if they do nothing to stop them from sending, I mean, I'm going to kill you, I'm going to rape your child, whatever, you have no responsibility whatsoever to stop them, that you're completely protected. This ISP does not have the responsibility to prevent the internet messages from going out, even if that's noticed. There are other avenues that the aggrieved party can go down. But you can't assert that Southwest Airlines is an ISP. Absolutely I can't, because they are a provider of the internet. So let me get this right. Southwest Airlines is an ISP, and then you have a bigger ISP behind Southwest Airlines that is providing the internet service that Southwest Airlines is using. So really, there are two ISPs involved in this case. That doesn't sound plausible to me, it doesn't sound reasonable. I would think there's only one ISP, and that's the company that's providing the internet access. Southwest Airlines is simply providing a means to access the internet by having computers at its work site. And I think that makes an ISP, at least according to the congressional reports published concurrently with the Act. So there's a major ISP, and then there's a junior ISP? I wish I knew how technology works better than that. I don't know how the ISPs work, I just know that the case law and the congressional notes say that an employer that provides its employees with internet access is an ISP. In that type of situation, because that's where the employer is getting its internet access from. So let me get this right. The circuit court granted the summary judgment because it took the complaint, the first complaint as all the allegations as accepted as truth, as true, but in your answer, didn't you deny the allegation that all these thousands of defamatory emails were sent? Doesn't that give rise to a material question of fact that has to be resolved before the CDA can be invoked? No, I don't think so, Tim. I think that's the difference between whether the CDA works to preempt the claim itself, or does it work to prevent the plaintiff from using certain types of evidence here in internet communications as the basis. So the CDA is a very broad statute. You're saying that it not only grants immunity, but it bars the use of certain evidence that would come by way of the internet to support, substantiate a negligent entrustment or negligent supervision cause of act? Yes, and if this was a case where the only allegations of negligent supervision rode on the internet communications, the entire claim would be barred. Thank you very much. Very briefly, the statute is silent on whether the employer is to be determined a provider. I agree completely with your analysis of the situation that there's a regular provider, then you're making the employer a provider. Yes, the only case that says the employer is a provider is the California case. I think that case was wrong on that point. The trial court in this case also found that the employer here, Southwest, was a provider. In the appendix in her first ruling on the summary judgment on the First Amendment complaint at A7, their investigation of the issue and whether Mr. McGrew denied ever doing it was not relevant in terms of the decision below. And the appeal is not based, I don't understand how the situation where the defendant keeps saying that this is based on the First Amendment complaint. That order is in the summary judgment was not a final order. And the cases the defendant relies on other than Delfino, Barrett and Doe, both involved real internet providers. I don't understand why you still bring up not a final order because I think 304A deals with non-final orders that are made final by virtue of the exercise of discretion of the circuit court that makes a specific finding that it is now a final order. Absolutely. But in this case, you can't by saying that it's a 304A doesn't make it a 304A and if there are still claims pending below I'm just afraid you're going to say there's no jurisdiction because my opponent is saying that there's still something left below about the telephone calls. Nobody's arguing that. Well, he said the telephone calls are still below. And if those telephone calls are still open, then I believe the court split a claim. The first question we ask people is how do we have jurisdiction? Okay, thank you very much. You gave us a very interesting case as you say a case of first impression and we'll take the case under advisement.